UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEANNA M. ROMAN,<br><br>          Plaintiff,<br><br>          v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration,<br><br>          Defendant. | Case No. ED CV 14-409-SP<br><br>MEMORANDUM OPINION AND ORDER |

**I.**

**INTRODUCTION**

On March 14, 2014, plaintiff Deanna M. Roman filed a complaint against the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents one issue for decision, whether the Administrative Law Judge ("ALJ") erred at step five by failing to identify and explain inconsistencies between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT").  Memorandum in Support of Complaint ("P. Mem.") at 6-15; Memorandum in Support of Defendant's Answer ("D. Mem.") at 2-9.

Having carefully studied the parties' moving and opposing papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ did err at step five, but the error was harmless. Consequently, the court affirms the decision of the Commissioner denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was forty-four years old on her alleged disability onset date, has an eleventh grade education.  AR at 53, 388, 393, 444.  She has past relevant work as a retail store assistant manager and child care attendant.  *Id.* at 38-39, 534.

On May 22, 2006, plaintiff filed applications for DIB and SSI, due to chronic fatigue, memory loss, depression, hypertension, neuropathy, diabetes, and fibromyalgia.  *Id*. at 388, 393, 439.  The Commissioner denied plaintiff's application initially and upon reconsideration, after which she filed a request for a hearing.  *Id.* at 181-87, 217-24.

On August 8, 2008, November 5, 2008, and January 23, 2009, plaintiff, represented by counsel, appeared and testified before ALJ Lowell Fortune.  *Id.* at 51-75, 82-88, 101-15.  The ALJ also heard testimony from plaintiff's husband, from Samuel Landau, a medical expert, and from Corinne Porter, a vocational expert ("VE").  *Id.* at 78-82, 88-96, 116-31.

On September 29, 2009, the ALJ denied plaintiff's claim for benefits.  *Id.* at 188-204.  Plaintiff filed a timely request for review of the decision, which the

Appeals Council granted. *Id.* at 205-09. The Appeals Council vacated the ALJ's decision due to legal error and remanded the case for further proceedings. *Id.* Upon remand, the ALJ was ordered to re-evaluate plaintiff's mental impairments and residual functional capacity, and further develop the administrative record as needed. *Id.*

On September 6, 2011 and February 7, 2012, plaintiff, again represented by counsel, appeared and testified before a different ALJ, Mason D. Harrell, Jr. *Id.* at 136-44, 153-56, 170-73. The ALJ also heard testimony from two medical experts, Dr. Samuel Landau and Dr. David Glassmire, and from Troy Scott, a VE. *Id.* at 144-52, 161-70, 174-78.

On March 23, 2012, the ALJ denied plaintiff's claim for benefits. *Id.* at 34-40. Plaintiff filed a timely request for review of the decision, which the Appeals Council denied. *Id.* at 1-3, 19.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff has not engaged in substantial gainful activity since February 28, 2006, the alleged onset date. *Id.* at 27.

At step two, the ALJ found that plaintiff suffered from the following severe impairments: obesity; poorly controlled diabetes mellitus; chronic pain based on fibromyalgia syndrome, including irritable bowel syndrome complaints; a major depressive disorder with psychotic features; and post-traumatic stress disorder. *Id.*

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* at 28-29.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152,

determined that she had the capacity to perform a limited range of light work as defined in 20 C.F.R. § 404.1567(b), consisting of: occasionally lifting or carrying twenty pounds; frequently lifting or carrying ten pounds; standing or walking two hours out of an eight-hour workday without the use of a cane; sitting for an unlimited amount of time, but with breaks every two hours; occasionally stooping and bending; climbing stairs, but restricted from working at heights, or balancing; and performing frequent gross and fine manipulation, but restricted from performing forceful gripping, grasping, or twisting. *Id.* at 29.  Plaintiff's mental limitations restrict her to: simple repetitive tasks with no public interaction; non-intense co-worker and supervisor interactions; no tasks that require co-worker interactions for completion, although she can perform similar tasks in the same room with others; and no work requiring hyper vigilance – because plaintiff may lose her attention, one to two second, for less than ten times a day. *Id.*  The ALJ also noted that plaintiff should work in an air-conditioned environment. *Id.*

The ALJ found, at step four, that plaintiff was unable to perform her past relevant work. *Id.* at 38.

At step five the ALJ found that there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including mail sorter and electrical bench worker. *Id.* at 39-40.  Consequently, the ALJ concluded that plaintiff did not suffer from a disability as defined by the Social Security Act. *Id.* at 40.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-3, 19.  The decision of the ALJ stands as the final decision of the Commissioner.

---

1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

# III.
# **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

IV.

**DISCUSSION**

Plaintiff contends the ALJ erred at step five because he improperly relied on the testimony of the VE, who identified jobs that exceeded plaintiff's RFC. P. Mem. at 6-15. Specifically, plaintiff argues the ALJ erred by failing to identify and explain two inconsistencies between the VE's testimony and the DOT. *Id.*

At step five, the burden shifts to the Commissioner to show that the claimant retains the ability to perform other gainful activity. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can perform, given his or her age, education, work experience, and RFC. 20 C.F.R. § 416.912(f).

ALJs routinely rely on the DOT "in evaluating whether the claimant is able to perform other work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); *see also* 20 C.F.R. § 416.966(d)(1) (stating the DOT is source of reliable job information). The DOT is the rebuttable presumptive authority on job classifications. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). An ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons therefor. *Massachi*, 486 F.3d at 1152-53 (citing Social Security Ruling ("SSR") 00-4p).[2]  But failure to so inquire

---

[2] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with

6

can be deemed harmless error where there is no apparent conflict or the VE provides sufficient support to justify deviation from the DOT. *Id.* at 1154 n.19.

In order for an ALJ to accept a VE's testimony that contradicts the DOT, the record must contain "'persuasive evidence to support the deviation.'" *Id.* at 1153 (quoting *Johnson*, 60 F.3d at 1435). Evidence sufficient to permit such a deviation may be either specific findings of fact regarding the claimant's residual functionality, or inferences drawn from the context of the expert's testimony. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997) (citations omitted).

Here, the ALJ, as required, asked the VE whether his testimony was consistent with the DOT, to which the VE replied "yes." AR at 175. Although the ALJ fulfilled his initial obligation to inquire whether the VE's testimony conflicted with the DOT, that was not the end of the ALJ's obligations. Even where a VE wrongly testifies that there is no conflict, where "evidence from a VE 'appears to conflict with the DOT,' SSR 00-4p requires further inquiry: an ALJ must obtain 'a reasonable explanation for the apparent conflict.'" *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008) (quoting SSR 00-4p). Where the ALJ fails to obtain an explanation for and resolve an apparent conflict – even where the VE did not identify the conflict – the ALJ errs. *See Hernandez v. Astrue*, 2011 WL 223595, at *2-5 (C.D. Cal. Jan. 21, 2011) (where VE incorrectly testified there was no conflict between her testimony and DOT, ALJ erred in relying on VE's testimony and failing to acknowledge or reconcile the conflict); *Mkhitaryan v. Astrue*, 2010 WL 1752162, at *3 (C.D. Cal. Apr. 27, 2010) ("Because the ALJ incorrectly adopted the VE's conclusion that there was no apparent conflict, . . . the ALJ provided no explanation for the deviation" and "therefore committed legal error warranting remand.").

---

the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

A.  **The ALJ Erred at Step Five With Respect to Plaintiff's Non-Exertional Limitations, But the Error was Harmless**

Plaintiff argues the ALJ erred at step five when he concluded that plaintiff could perform the job of mail sorter. P. Mem. at 11-13. Specifically, plaintiff argues the job, which requires a reasoning level of three, is incompatible with plaintiff's RFC restricting her to simple repetitive tasks, and the ALJ failed to identify or explain the apparent conflict. *Id.* As discussed above, the VE stated that his testimony was consistent with the DOT, and the ALJ relied on the VE's testimony. AR at 175. The question is whether the VE incorrectly testified there was no conflict, and the ALJ improperly relied on the testimony in the face of evidence of an apparent conflict.

Each DOT job description includes general educational development ("GED") scales for reasoning, language, and mathematics, which are "aspects of education (formal and informal) which are required of the worker for satisfactory job performance." DOT, Appendix C, Section III. To determine a job's simplicity and the reasoning level required, one should look to the GED reasoning level ratings for the job listed in the DOT. *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 983 (C.D. Cal. 2005). A job's reasoning level "gauges the minimal ability a worker needs to complete the job's tasks themselves." *Id.*

A review of the reasoning level associated with the job of mail sorter supports the conclusion that there is an apparent conflict in this case. Plaintiff's RFC restricts her to simple repetitive tasks. AR at 29. The DOT classifies the job of mail sorter as having reasoning level three. DOT 209.687-026. Level three reasoning assumes a person can "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and] [d]eal with problems involving several concrete variables in or from standardized situations." *See id.*; DOT, App. C. The Ninth Circuit recently held that "there is an apparent

conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning." *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015).[3]

Here, the VE testified someone with plaintiffs's RFC could perform the job of mail sorter, and that his testimony was consistent with the DOT. AR at 175. Further, the VE offered no explanation that addressed the apparent conflict between plaintiff's RFC and a job requiring level three reasoning. *See id.* The ALJ thus erred in relying on the VE's testimony without "obtain[ing] 'a reasonable explanation for the apparent conflict.'" *Overman*, 546 F.3d at 463.

Even so, the ALJ's error is harmless, because this conflict with the DOT (and plaintiff's argument) relates only to the job of mail sorter. *See* P. Mem. at 11-13; D. Mem. at 3-4. The VE identified a second job that exists in significant numbers in the national economy requiring only reasoning level two, which plaintiff could perform. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (defining "an error [a]s harmless so long as there remains substantial

---

[3] *Zavalin* was not issued until after the ALJ's decision, but case law prior to it suggested there was an apparent conflict. *See* P. Mem. at 11-13. As defendant argues, there is a split among the circuit courts as to whether the limitation to simple tasks is compatible with a reasoning level of three. D. Mem. at 4; *compare Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (a claimant limited to "simple" work could perform a reasoning level three job); *Renfrow v. Astrue*, 496 F.3d 918, 920-21 (8th Cir. 2007) (a claimant with an inability to do "complex technical work" was not precluded from unskilled jobs with a reasoning level of three), and *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (limitation to simple and routine tasks is inconsistent with level-three reasoning). But among the Ninth Circuit's district courts that addressed this issue prior to *Zavalin*, they consistently held that a limitation to simple, routine tasks is incompatible with reasoning level three jobs. *See, e.g., Salas v. Astrue*, 2011 WL 2620370, at *7 (E.D. Cal. June 29, 2011); *Bagshaw v. Astrue*, 2010 WL 256544, at *5 (C.D. Cal. Jan. 20, 2010); (agreeing that reasoning level three "might conflict"with a limitation to simple, routine tasks).

9

evidence supporting the ALJ's decision"). As discussed below, even if plaintiff is not capable of performing work as a mail sorter, her RFC permits her to perform the job of an electrical bench worker. *See Hackett*, 395 F.3d at 1176 (finding the restriction to simple repetitive tasks consistent with reasoning level two); *Salas*, 2011 WL 2620370, at *7 (same); *Bagshaw*, 2010 WL 256544, at *6 (same); *Meissl*, 403 F. Supp. 2d at 984 (same).

B. **The ALJ Did Not Err at Step Five With Respect to Plaintiff's Exertional Limitations**

Plaintiff contends that the ALJ erred at step five because he failed to identify and explain the conflict between the VE's testimony and the DOT with respect to plaintiff's standing and walking limitation. P. Mem. at 13-15. Specifically, plaintiff argues that because the jobs of mail sorter and electrical bench worker are classified as light work (*see* DOT 209.687-026, 726.687-010), they require the ability to stand and walk for six hours in an eight-hour work day, which exceeded her RFC of standing and walking no more than two hours in an eight-hour workday. *Id.* Plaintiff misconstrues the regulations.

> Light work is defined as work that:
> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 416.967(b); *see* DOT, App. C. Thus, contrary to plaintiff's assertion, the only requirement for light work is the ability to lift and carry twenty pounds occasionally and ten pounds frequently. Jobs classified as light work do not necessarily require that a person stand or walk six hours. Pursuant to SSR 83-10,

"the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." But not every light work job requires "the full range" of light work.

For the two jobs at issue here, the DOT specifically defines the "light work" requirements in terms of pounds of force that must be exerted. *See* DOT 209.687-026 (mail clerk); DOT 726.687-010 (electronics worker). It goes on to state:

> Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

*Id.* Thus, nothing in the DOT's description of these positions requires standing or walking six hours in an eight-hour workday. Indeed, the definition reflects that some jobs that involve mostly sitting may constitute light work. Therefore, from an exertional standpoint, there was no inconsistency between the DOT and the VE's testimony that plaintiff could perform the jobs of electronics worker and mail clerk.

Accordingly, the ALJ did not err at step five by relying on the VE's testimony that plaintiff could perform the work of an electronic bench worker. The hypothetical presented to the VE specifically and appropriately included plaintiff's standing and walking limitation. AR at 174-75. Once presented with an accurate hypothetical based on an uncontested RFC, the VE is charged with

1  "translat[ing] factual scenarios into realistic job market probabilities." *Sample v.
2  Schweiker*, 694 F.2d 639, 643-44 (9th Cir. 1982). "The DOT lists maximum
3  requirements of occupations as generally performed, not the range of requirements
4  of a particular job as it is performed in specific settings." SSR 00-4p. An ALJ
5  may rely on the testimony of a VE "to provide more specific information about
6  jobs or occupations than the DOT." *Id*; *Massachi*, 486 F.3d at 1152-53; *Bayliss v.
7  Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("A VE's recognized expertise
8  provides the necessary foundation for his or her testimony. Thus, no additional
9  foundation is required."); SSR 00-4p.

There is nothing in the DOT description of the electronic bench worker job that conflicts with plaintiff's RFC. S*ee* DOT 726.687-010. Substantial evidence thus supports the ALJ's step five finding.

## V.
## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing this action with prejudice.

DATED: September 29, 2015

SHERI PYM
United States Magistrate Judge